# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA NICOLE McCARTHY, | 1:09-cv-1967 LJO SKO |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | (Doc. 2) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | **OBJECTIONS DUE 14 DAYS** |
| Defendant. | |

## INTRODUCTION

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act. 42 U.S.C. §§ 405(g), 1383(c)(3). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.

## FACTUAL BACKGROUND

Plaintiff was born in 1960 and has a high-school education but no past relevant work. (Administrative Record ("AR") 18.) On February 23, 2007, Plaintiff filed an application for SSI, alleging disability beginning on November 15, 2006, due to back problems. (AR 86-93, 100, 105.)

**A.     Medical Evidence**

    **1.     University Medical Center**

On February 1, 2003, magnetic resonance imaging ("MRI") of Plaintiff's lumbar spine revealed desiccation of the L4-5 disc "associated with a broad base bulge resulting in mild to moderate canal stenosis." (AR 270.) On March 18, 2003, Plaintiff underwent back surgery to treat a herniated disc at L5-S1. (AR 264.) MRI of Plaintiff's lumbar spine on that date revealed unremarkable alignment and no fracture. (AR 266.)

On February 2, 2004, MRI of Plaintiff's lumbar spine revealed "[i]nterval resection of L5-S1 disc herniation. No evidence of residual/recurrent disc herniation. Mild bulging discs at L4-L5 and L5-S1 without frank central spinal stenosis." (AR 244.)

    **2.     Dr. Tran**

On June 17, 2007, Juliane Tran, M.D., performed a consultative orthopedic examination of Plaintiff. (AR 139-42.) Dr. Tran noted Plaintiff's complaints of neck pain with radicular symptoms of the left upper extremities and Plaintiff's subjective complaints of back pain with a history of lumbar diskectomy. (AR 142.) Dr. Tran further noted that the "examination has multiple abnormalities, out of proportion to the physical findings." (AR 142.) Dr. Tran could not "evaluate many aspects of [Plaintiff's] range of motion or even strength testing" because "[Plaintiff's] effort on examination [was] minimal." (AR 142.) Therefore, Dr. Tran could not assess Plaintiff's functional restrictions and opined that Plaintiff "probably should have a psychiatric evaluation." (AR 142.)

    **3.     Dr. Brubaker**

On December 13, 2004, Daniel Brubaker, D.O., noted that Plaintiff complained of headaches on her left side with numbness. (AR 160.) Dr. Brubaker further noted that Plaintiff was "having a lot of pain resulting from her significant other dying. She is having a lot of back pain. She is dealing with things OK. She is doing OK." (AR 160.)

On February 13, 2008, Dr. Brubaker completed a medical source statement regarding Plaintiff's ability to perform work-related physical activities. (AR 128-33.) Dr. Brubaker opined that Plaintiff could (1) occasionally lift and carry less than five pounds and (2) sit and stand for 30 to 60 minutes and walk for one hour total in an eight-hour work day. (AR 128.) Although Plaintiff did not require the use of a cane to ambulate, Dr. Brubaker opined that she "should use one." (AR 129.) Dr. Brubaker stated that "lumbar disc causes severe back pain" and that "cervical discs cause weakness." (AR 130.) Dr. Brubaker further stated that Plaintiff's limitations were first present in September 2006. (AR 133.)

### 4.  Dr. Abejie

On December 31, 2008, an MRI of Plaintiff's lumbar spine ordered by Dr. Abejie revealed no disc herniation or spinal canal stenosis and only some degenerative changes. (AR 183.) Plaintiff's cervical spine showed mild spinal canal stenosis at C6-C7. (AR 185.)

### 5.  Dr. O'Laughlin

On March 5, 2009, Thomas O'Laughlin, M.D., completed an initial physical medicine consultation with and evaluation of Plaintiff. (AR 276-78.) Dr. O'Laughlin reported as follows:

> [Plaintiff] has neck and lower back pain. She had recent MRIs of her neck and back down [sic] in December 2008. We were able to look at the disc. . . . She also gets some left shoulder pain. This MRI did not reveal a lot of arthritis or other symptoms to suggest the etiologies within the shoulder itself[;] although this is possible, it may well be coming from the neck.

(AR 276.) Dr. O'Laughlin noted that Plaintiff "would like to be on SSI. Currently the patient [had] a lawyer that [was] working along with her." (AR 276.) The doctor further observed that Plaintiff's left hand appeared "to be more less [sic] swollen than the right." (AR 277.) Dr. O'Laughlin found that Plaintiff had "good dorsiflexion and plantar flexion at the ankles bilaterally." (AR 278.) "Dr. O'Laughlin assessed Plaintiff with, *inter alia*, "depression." (AR 278.)

On April 7, 2009, Scott Catone, a physician's assistant, completed a medical source statement regarding Plaintiff's ability to do work-related physical activities. (AR 279-85.) Plaintiff could occasionally lift up to 10 pounds. (AR 279.) Plaintiff could sit, stand, and walk for one hour each

3

without interruption. (AR 280.) Regarding Plaintiff's activities that she could perform in an eight-hour day, Mr. Patone indicated, "Bed, alternates reclines [sic], walking, sitting, and standing." (AR 280.) Plaintiff could not walk a block at a reasonable pace on rough or uneven surfaces. (AR 284.)

**B.     Administrative Hearing**

The Commissioner denied Plaintiff's application initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 42-66.) On April 17, 2009, ALJ Christopher Larsen held a hearing where Plaintiff and a vocational expert testified. (AR 20-41.)

**1.     Plaintiff's Testimony**

The ALJ summarized Plaintiff's testimony in his decision as follows:

> [Plaintiff] testified she has extreme pain in the back and neck, and a swollen left hand. She underwent lower lumbar surgery in March, 2003, which she stated was not successful. Pain in her low back reportedly travels to her legs, arms, and hand. Her neck pain is constant, burning, and sharp. Her left arm is constantly swollen and the more she does, the more pain she feels. She takes Norco and morphine, which make her sleepy and impair[s] her concentration. She sees Dr. O'Laughlin and physician assistant Mr. Catone once every two months. [Plaintiff] testified she is private pay because she does not have any insurance. She testified Dr. Brubaker recommended a surgery that does not exist yet. She lies down 50% of the time and can only lie on her sides, but not on her back. She also uses a heating pad a couple of times a day. Allegedly, she can only lift a gallon of milk, using both hands, and struggles to do it. She can only stand and sit 10 to 15 minutes each for a total of 16 times a day and walk 1/4 mile. [Plaintiff] did not know if she could reach with her left arm. She lives with her mother in a mobile home and does not do any household chores. She can prepare simple meals. During the day she paces, sits, visits people when they come over, goes outside, goes grocery shopping once a week, and can drive to doctors' appointments. Her income is general relief and food stamps.

(AR 15.)

**2.     Vocational Expert Testimony**

A hypothetical person of Plaintiff's age, education, and work experience could not perform work in the national economy if such a person could perform work at the light exertional level but could reach only occasionally with the left dominant arm. (AR 39.) Further, a hypothetical person of Plaintiff's age, education, and work experience could not perform any work if such a person could only occasionally lift up to 10 pounds and in an eight-hour day, stand and walk for a total of two

hours and sit for a total of two hours.  (AR 39.)  The vocational expert's testimony was consistent with the Dictionary of Occupational Titles.[1]  (AR 40.)

**C.    ALJ's Decision**

On June 29, 2009, the ALJ issued a decision finding Plaintiff not disabled since the application date of February 23, 2007. (AR 9-19.) Specifically, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since February 23, 2007; (2) had an impairment or a combination of impairments that is considered "severe" based on the requirements in the Code of Federal Regulations; (3) did not have an impairment or combination of impairments that meets or equals one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; and (4) could perform jobs that existed in significant numbers in the national economy. (AR 14-18.) The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform the full range of light work.[2]  (AR 18.)

Regarding Plaintiff's credibility, the ALJ found that, "[a]fter carefully considering the evidence, . . . [Plaintiff's] medically-determinable impairments can reasonably be expected to produce her alleged symptoms, but her statements about the intensity, persistence, and limiting effects of those symptoms are not credible to the extent they are inconsistent with [the ALJ's] evaluation of [Plaintiff's] residual functional capacity." (AR 15.) The ALJ found that "[t]he objective medical evidence does not support [Plaintiff's] subjective complaints." (AR 16.) The ALJ further found that, "[t]o the extent [Plaintiff's] symptoms vary from examination to examination, they are less reliable in determining her residual functional capacity." (AR 17.)

The ALJ discounted Dr. Brubaker's opinion as follows:

> Dr. Brubaker's opinion is troubling to me for three reasons.  First, the objective medical evidence supporting it is at least equivocal. . . . Dr. Brubaker does not

---

[1] The Social Security Administration has taken administrative notice of the Dictionary of Occupational Titles, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs. *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.8 (9th Cir. 2007); *see also* 20 C.F.R. § 416.966(d)(1).

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b).

    specify any particular medical or clinical findings on the form, other than what is essentially a recitation of [Plaintiff's] subjective complaints. . . . Second, in a December 13, 2004, note, Dr. Brubaker observes [Plaintiff] is "having a lot of pain resulting from her significant other dying." This suggests to me Dr. Brubaker is using a fairly broad definition of "pain." Third, I cannot tell from Dr. Brubaker's records whether [Plaintiff] whether gave more effort in his exam than she did during consultative evaluator Dr. Tran's examination. One detail I find troubling is that Dr. O'Laughlin, on March 5, 2009, reports [Plaintiff] has "good dorsiflexion and plantar flexion at the ankles bilaterally." When she saw Dr. Tran, [Plaintiff] refused to move her left ankle at all, saying she could not.

(AR 17.)

    Plaintiff sought review of this decision before the Appeals Council, which denied review on September 11, 2009. (AR 1-4.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481.

**D.    Plaintiff's Appeal**

    On November 16, 2009, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision. Plaintiff contends that the ALJ failed to evaluate properly the opinion evidence and failed to assess properly Plaintiff's credibility.

## SCOPE OF REVIEW

    The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

    "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305

U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting him from performing basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id.* §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant

has sufficient RFC[3] despite the impairment or various limitations to perform his past work. *Id.* §§ 404.1520(f), 416.920(f). If not, in Step Five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

### A. Plaintiff's Credibility

The ALJ found that Plaintiff's "medically-determinable impairments can reasonably be expected to produce her alleged symptoms, but her statements about the intensity, persistence, and limiting effects of those symptoms are not credible to the extent they are inconsistent with [the ALJ's] evaluation of [Plaintiff's] residual functional capacity." (AR 15.) First, the ALJ found that Plaintiff "gave such poor effort before consultative examiner Dr. Tran that neither Dr. Tran nor the state-agency doctors would hazard a guess as to her actual residual functional capacity. Dr. Tran noted 'multiple abnormalities, out of proportion to the physical findings.'" (AR 16 (internal citations omitted).) Second, the ALJ found that the objective medical evidence did not support Plaintiff's subjective complaints. (AR 16.) Third, the ALJ found that the variation in Plaintiff's statement regarding the need for surgery, "like the variation in her symptoms at different examinations, highlights the problems with [Plaintiff's] credibility." (AR 18.)

Plaintiff contends that these foregoing reasons are not legally sufficient to reject her testimony. According to the Commissioner, however, the ALJ gave valid reasons for finding Plaintiff not entirely credible.

---

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

8

**1.     Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective complaints, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives "specific, clear and convincing reasons" for the rejection. *Id.* As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226-27 (9th Cir. 2009); 20 C.F.R. §§ 404.1529, 416.929. Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

**2.     Analysis**

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms. Therefore, absent affirmative evidence of malingering, the ALJ's reasons for rejecting Plaintiff's testimony must be clear and convincing. As discussed further below, the Court finds that the ALJ gave clear and convincing reasons supported by the record to discount Plaintiff's credibility.

First, the ALJ found that the objective medical evidence in the record did not fully support Plaintiff's subjective complaints. Although the inconsistency of objective findings with subjective claims may not be the sole reason for rejecting subjective complaints of pain, *Light*, 119 F.3d at 792, it is one factor which may be considered with others. *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). Here, for example, the ALJ found that the MRI of Plaintiff's lumbar spine showed only degenerative changes and that the MRI of Plaintiff's cervical spine showed only mild spinal canal stenosis. (AR 16.)

Further, the ALJ noted Plaintiff's "variations in her symptoms at various examination" that highlighted problems with her credibility, noting Plaintiff's lack of effort at Dr. Tran's examination. (AR 17, 18.) An ALJ's consideration of a claimant's tendency to exaggerate and "poor effort" during a consultative examination has been found to support discrediting the claimant's testimony. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). Given the evidence in the record, the ALJ could reasonably infer that Plaintiff's complaints were not as severe as she presented. *Tommasetti*, 533 F.3d at 1041 (ALJ may draw reasonable inferences from the record).

In sum, questions of credibility and resolutions of conflicts in the testimony are functions solely of the Commissioner. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). If, as here, the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the Court's role to "second-guess" it. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ cited clear and convincing reasons for rejecting Plaintiff's subjective complaints regarding the intensity, duration, and limiting effects of his symptoms. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196-97 (9th Cir. 2004) (claimant's contradictory testimony unsupported by objective medical evidence constituted substantial evidence in support of ALJ's negative credibility determination). Moreover, the ALJ's reasons were properly supported by the record and sufficiently specific to allow this Court to conclude that the ALJ rejected Plaintiff's testimony on permissible grounds and did not arbitrarily discredit Plaintiff's testimony.

**B.     The ALJ's Consideration of Dr. Brubaker's Opinion**

The ALJ discounted Dr. Brubaker's opinion on a medical source statement regarding Plaintiff's physical ability to perform work-related activities. Plaintiff contends that the ALJ failed to evaluate properly Dr. Brubaker's opinion.

**1.     Legal Standard**

The medical opinions of three types of medical sources are recognized in Social Security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, a treating physician's opinion should be accorded more weight than opinions of doctors who did not treat the claimant, and an examining physician's opinion is entitled to greater weight than a non-examining physician's opinion. *Id.* Where a treating or examining physician's opinion is uncontradicted by another doctor, the Commissioner must provide "clear and convincing" reasons for rejecting the treating physician's ultimate conclusions. *Id.* If the treating or examining doctor's medical opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by substantial evidence in the record. *Id.* at 830-31; *accord Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Tommasetti*, 533 F.3d at 1041.

**2.     Analysis**

The ALJ discounted Dr. Brubaker's opinion because it did "not specify any particular medical or clinical findings on the form, other than what is essentially a recitation of [Plaintiff's] subjective complaints." (AR 17.) The lack of findings in Dr. Brubaker's opinion other than that "lumbar disc causes severe back pain" and "cervical discs cause weakness" (AR 130) was a specific and legitimate reason to discredit his opinion, as an ALJ may discount a treating physician's opinion

on the grounds that the opinion was based on a claimant's subjective complaints and was unsupported by objective medical findings. *Batson*, 359 F.3d at 1195. In any event, contrary to Dr. Brubaker's opinion, an MRI of Plaintiff's lumbar spine in December 2008 revealed no disc herniation or spinal canal stenosis and only some degenerative changes; an MRI of Plaintiff's cervical spine showed mild spinal canal stenosis at C6-C7 (AR 183). *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (determining that, in discounting claimant's pain testimony, ALJ appropriately considered objective medical findings, including MRI and X-rays showing only mild degenerative disease and no disc herniation or nerve root impingement); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (per curiam) (MRI revealing very minimal degenerative disc disease, no bulge or protrusion, and no canal stenosis or nerve root impingement is inconsistent with finding total and permanent disability); *cf. Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (claimant's "pain can be directly attributed to an objective finding–a diagnosis of persistent nerve root irritation and more recently, to a recurrent herniated disc").

Moreover, because of Plaintiff's inconsistent results on examination, the ALJ could not tell whether Plaintiff gave more effort during Dr. Brubaker's examination than she did for Dr. Tran, which, as noted above, was a clear and convincing reason to discount Plaintiff's credibility. *See Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) (disregarding treating physician's opinion because it was premised on plaintiff's subjective complaints, which the ALJ had already discounted). In short, the ALJ gave specific and legitimate reasons, supported by substantial evidence in the record, to discount Dr. Brubaker's opinion. The Court should, therefore, affirm the Commissioner's decision and deny Plaintiff's appeal.

## RECOMMENDATION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence and is based on proper legal standards. Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be

DENIED and that JUDGMENT be entered for Defendant Michael J. Astrue and against Plaintiff Pamela Nicole McCarthy.

This Findings and Recommendation will be submitted to the Honorable Lawrence J. O'Neill pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with this Findings and Recommendation, the parties may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir.1991).

IT IS SO ORDERED.

**Dated:   February 16, 2011**              /s/ Sheila K. Oberto
                                          UNITED STATES MAGISTRATE JUDGE

13